IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KEITH MCDONALD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:17CV65 |
| | ) |
| NANCY BERRYHILL, | ) |
| Acting Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Keith McDonald brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has before it the certified administrative record[1] and cross-motions for judgment.

I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI in September of 2012 alleging a disability onset date of February 18, 2012. (Tr. 239-426, 247-51.) The applications were denied initially and upon reconsideration. (*Id.* at 132-33, 172-73.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on August 25, 2015. (*Id.* at 31-

___

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 9.)

99, 201-02.) After a hearing, the ALJ determined that Plaintiff was not disabled. (*Id.* at 11-30.) The Appeals Council denied a request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-3.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the sequential analysis, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920, to ascertain whether the claimant is disabled. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] The ALJ determined at step one that Plaintiff

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform

2

had not engaged in substantial gainful activity since the February 18, 2012 alleged onset date. (Tr. 16.) The ALJ next found the following severe impairments at step two: osteoarthrosis and allied disorders, and fractures of the upper limb. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 18.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform sedentary work with the following limitations:

> occasionally lift/carry 10 pounds; frequently lift/carry up to 10 pounds; sit for six hours in an eight-hour workday; stand and walk up to two hours in an eight-hour workday; and push/pull as much as he can lift/carry. He can frequently operate hand controls, reach overhead, handle, finger, and feel with the left upper extremity. He can occasionally climb ramps and stairs; never climb ladders and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. He can never have exposure to unprotected heights, moving mechanical parts, or extreme cold. He is further limited to performing simple, routine tasks.

(*Id.* at 18-19.) At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 21.) Last, at step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 22-23.) Consequently, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 23.)

### IV. ISSUES AND ANALYSIS

Plaintiff raises two issues in his brief. First, Plaintiff contends that the ALJ erred by

---

any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

failing to include limitations in the RFC regarding Plaintiff's ability to rotate, extend and flex his neck. (Docket Entry 13 at 4-7.) Second, Plaintiff contends that the ALJ erred by summarily assigning partial weight to the medical opinion of Plaintiff's treating physician, Dr. Paul G. Singh. (*Id.* at 7-12.) For the following reasons, the Court disagrees.

### A. Substantial evidence supports the ALJ's RFC determination.

Plaintiff argues that the ALJ erred by failing to include limitations in the RFC regarding Plaintiff's ability to rotate, extend and flex his neck. (Docket Entry 13 at 4-7.) RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations

4

omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). As to the role of the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p, 1996 WL 374184, at *1.

In *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit held that there is no *per se* rule requiring remand if a function-by-function analysis is not performed. However, the Court held that "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review" remand may be appropriate. *Id.* (internal quotation and citations omitted). The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling[,]" which "should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations omitted).

Here, the ALJ considered the entire record, and determined that Plaintiff retained the RFC to perform a range of unskilled, sedentary work. (Tr. 18-21.) There is nothing in the

5

record to suggest that the ALJ erred by failing to include an additional neck range of motion limitation in the RFC. As the Commissioner argues, the ALJ, at great length, discussed Plaintiff's consistent complaints of neck pain that radiated to the left shoulder. (*Id.* at 19-21.) The ALJ noted Plaintiff's 2012 moderate restrictions in range of motion of the cervical spine, mild tenderness of the cervical spine, positive Spurling's signs on the left, limited lumber spine flexion, and motor weakness in the C5 and C6 myotomes. (*Id.* at 20, 357-58, 444-47.) Plaintiff underwent cervical discectomy in April 2012. (*Id.* at 20, 356-360.) The ALJ noted that after surgery, Plaintiff continued to complain of neck pain, but physical examinations demonstrated that Plaintiff transitioned with ease from a sit to stand position, walked without an assistive device and with a normal gait. (*Id.* at 20, 492, 511.) The ALJ further concluded that despite Plaintiff's ongoing complaints of worsening neck pain, the records revealed only mild-to-moderate findings. (*Id.* at 20.) As part of consistent medication management from January 2015 to May 2015, Plaintiff acknowledged that "[t]he improvement of quality of life with medication management . . . outweighs the negatives." (*Id.* at 660, 663, 666, 669.) Additionally, evidence in the record also indicates that Plaintiff occasionally drove a vehicle. (*Id.* at 40, 85.) As a whole, the record suggests that the ALJ's decision should not be disturbed.

Plaintiff's argument to the contrary is not persuasive. Plaintiff argues that the ALJ's failure to include neck range of motion restrictions runs afoul of *Mascio*. However, the undersigned disagrees. The ALJ noted that mild-to-moderate neck pain, and determined that the RFC findings of less than sedentary work were sufficient to account for Plaintiff's limitations. (*See* Tr. 21 ("[Plaintiff] would not be precluded from performing work within the

6

parameters of the [RFC] on a regular and sustained basis.") This RFC determination is also consistent with the weight given to Plaintiff's credibility and the opinion of his primary treating physician, Dr. Singh. (*See id.* at 19 (finding Plaintiff's statements "not entirely credible"); *Id.* at 21 (giving partial weight to Plaintiff's treating physician)). Plaintiff also argues that the ALJ mischaracterized the findings of Plaintiff's treating physician. The ALJ stated that Dr. Singh found that Plaintiff "had slightly limited range of motion (5%) of the cervical spine." (*Id.* at 21.) After the ALJ's decision was issued, Dr. Singh submitted a letter to the Appeals Council explaining what he thought was a misinterpretation of Plaintiff's medical condition. (*Id.* at 857.) He opined that Plaintiff had "significant limitation in range of motion in the cervical spine by at least 20%," and any range of motion performed is done with "disabling pain." (*Id.*) Given the partial weight assigned to Dr. Singh's opinion by the ALJ, any mischaracterization of this opinion was harmless error. Indeed, the ALJ gave only partial weight to Dr. Singh's opinion and a greater limitation as highlighted in the subsequent letter to the Appeals council would have shown even greater inconsistency between the opinion and Dr. Singh's own treatment notes. In sum, substantial evidence supports the ALJ's RFC assessment and no additional limitations were required.

### B. Substantial evidence supports the weight given to Plaintiff's treating physician.

Plaintiff also contends that the ALJ erred by summarily assigning partial weight to the medical opinion of Plaintiff's treating physician. (Docket Entry 13 at 7-12.) The "treating physician rule" generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which]

7

may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 416.927(c)(2). An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.* § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Opinions by physicians regarding the ultimate issue of whether a claimant is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. §§ 404.1527(d), 416.927(d). In instances where an ALJ decides not to give controlling weight to a treating physician, he or she must adequate explain his reasoning. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When the explanation given is insufficient, it "preclude[s] [the Court's] ability to undertake the 'meaningful review' with which we are tasked on appeal." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017) (citing *Radford*, 734 F.3d at 296)).

In the present case, on July 14, 2015, Dr. Singh issued a medical source statement regarding Plaintiff's medical impairments. (Tr. 831-35.) He noted that Plaintiff suffered

8

from cervical disc degeneration with cervical radiculopathy and left elbow cubital tunnel syndrome. (*Id.* at 831.) He also noted that Plaintiff suffered from chronic neck pain which was burning in nature along with left ulnar compression. (*Id.*) Plaintiff experienced tenderness, reflex loss, dropped things and displayed reduced grip strength. (*Id.*) Dr. Singh also indicated that Plaintiff had a limitation of motion, noting 5% cervical range of motion in all directions and no limitation in lumbar range of motion. (*Id.* at 831-32.) He also noted that Plaintiff suffered from moderate foraminal stenosis and was on opiate pain medication for pain with a side effect of drowsiness. (*Id.* at 832.)

Dr. Singh further determined that Plaintiff could only walk about two city blocks without rest or severe pain (*id.*) and could only sit about 5 minutes and stand for about 20 minutes at one with the need to shift positions at will with periods of walking around during the day. (*Id.* at 833.) The opinion indicated that Plaintiff could only occasionally lift up to 10 pounds and could only rarely look up or down (sustained flexion of the neck), or turn his head right or left. (*Id.* at 834.) Plaintiff could also occasionally hold his head in a static position, occasionally twist and stoop, and rarely crouch, climb ladders and climb stairs. (*Id.*) Dr. Singh opined that Plaintiff could only use his hands for reaching, handling and fingering about 30% of the day. (*Id.*) Furthermore, the opinion stated that Plaintiff would likely be off task about 20% of the day due to his symptoms and would have good days and bad days with about 3 days per month of absences. (*Id.* at 835.) Dr. Singh doubted that Plaintiff would be undergoing additional surgery. (*Id.*) He concluded that Plaintiff's failed neck surgery syndrome would affect his ability to work on a sustained basis. (*Id.*)

The ALJ addressed Dr. Singh's opinion and accorded it partial weight. (*Id.* at 21.) Specifically, the ALJ indicated that "[a]lthough Dr. Singh ha[d] a lengthy treating relationship with claimant, his opinions [were] not thoroughly supported by explanations or his own treatment records. (*Id.*) The ALJ's assessment here is not conclusory nor does it frustrate meaningful review. It is apparent that he considered the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). In drawing his conclusion, the ALJ identified Dr. Singh's *own* treatment notes, which is a category of evidence he specifically relied upon. *See Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016) ("While the ALJ did not cite specific pages in the record, his explanation relied on and identified a particular category of evidence.") (unpublished). Moreover, substantial evidence supports the weight given to Dr. Singh's opinion. For example, although the treatments reflect that the range of motion in the cervical spine was restricted, Dr. Singh repeatedly stated in his most recent treatment notes that Plaintiff had only "mild pain" (Tr. 659, 662, 665, 668, 837.) The records also reflect medications working "well" for Plaintiff. (*Id.* at 680, 690, 700.) As previously stated, several treatment notes indicated that "[t]he improvement of quality of life with medication management . . . outweighs the negatives." (*Id.* at 660, 663, 666, 669.)

Plaintiff arguments to the contrary are unpersuasive. Any mischaracterization of Dr. Singh's cervical restriction assessment is harmless error for the reasons stated above. Moreover, to the extent Plaintiff relies upon *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017), this argument is misplaced. The Fourth Circuit in *Lewis* found that the ALJ failed to adequately explain why controlling weight was not given to the plaintiff's treating physicians. *Id.* at 867.

The Court held that "the ALJ's analysis span[ned] only four lines and overlook[ed] critical aspects of [the plaintiff's] medical treatment history." *Id.* The Court explained that the opinions of the non-examining physicians bolstered the opinions of the treating physicians and "all of the medical professionals who examined [the plaintiff] provided opinions consistent with her treating physicians . . . ." *Id.* at 868.

Here, the ALJ actually found greater limitations than the state agency consultants. (Tr. 21, 100-31, 134-71.) Also, Plaintiff's pain level was often rated as a three to four on a scale of ten. (*Id.* at 20, 407, 419, 480, 489.) Plaintiff underwent left ulnar nerve decompression at the elbow with subcutaneous transportation in July 2015 (*id.* at 850), and when he last saw his treating surgeon in August 2015, Plaintiff reported that he was "doing excellent". (*Id.* at 854.) The ALJ's analysis was more than a "perfunctory" rejection; he noted a category of evidence –Dr. Singh's own treatment notes—that the ALJ found to be inconsistent with Dr. Singh's opinion. *See e.g., Skinner v. Berryhill,* No. CV ADC-16-3957, 2017 WL 5624950, at *10 (D. Md. Nov. 20, 2017) (unpublished) (concluding the at "the ALJ satisfied his burden to produce substantial evidence contradicting [treating physician's] opinions by drawing on [treating physician's] own treatment records . . . ."). For all these reasons, Plaintiff's argument fails.

### V. CONCLUSION

For the reasons stated herein, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings be denied (Docket Entry 12) be **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be **GRANTED**, and that the final decision of the Commissioner be upheld.

/s/ Joe L. Webster
Joe L. Webster
United States Magistrate Judge

December 14, 2017
Durham, North Carolina